UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANDREW J., | |
| Plaintiff, | Case No. C22-437-MLP |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.     INTRODUCTION

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in: (1) finding his seizure disorder did not meet Listing 11.02, (2) assessing his residual functional capacity ("RFC"), and (3) entering step-five findings that are inconsistent with Plaintiff's testimony and based on inconsistent vocational expert ("VE") testimony. (Dkt. # 8 at 2.[1]) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

---

[1] Counsel is reminded to review the briefing and formatting guidelines applicable in this district (dkt. # 7) to ensure compliance in future briefs.

ORDER - 1

## II.  BACKGROUND

Plaintiff was born in 1977, has two years of college education, and has worked as an audio-visual technician. AR at 512. Plaintiff was last gainfully employed in in 2019. *Id.* at 495-502.

In March 2015, Plaintiff applied for benefits, alleging disability as of September 2, 2014, with a date last insured of September 30, 2019. AR at 13, 52-53, 203, 442-48. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 209-14, 224-27, 230-31. The ALJ held hearings in July 2017 and August 2018 (*id*. at 81-131), and subsequently issued a decision finding Plaintiff not disabled. *Id*. at 178-200.

The Appeals Council granted Plaintiff's request for review, and remanded the matter to the ALJ for further proceedings. AR at 201-05. After the ALJ conducted a hearing in February 2021 (*id*. at 37-80), the ALJ issued another decision finding Plaintiff not disabled. *Id.* at 13-29.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 1.)

## III.  LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

1   "Substantial evidence" is more than a scintilla, less than a preponderance, and is such
2   relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
3   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th
4   Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical
5   testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d
6   1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may
7   neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*
8   *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one
9   rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.   DISCUSSION

### A.   The ALJ Did Not Harmfully Err at Step Three

12   At step three, the ALJ considers whether one or more of a claimant's impairments meet
13  or medically equal an impairment listed in Appendix 1 to Subpart P of the regulations. "The
14  listings define impairments that would prevent an adult, regardless of his age, education, or work
15  experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan*
16  *v. Zebley*, 493 U.S. 521, 532 (1990) (citations omitted). To meet a listing, an impairment "must
17  meet *all* of the specified medical criteria." *Id.* at 530. Plaintiff bears the burden of proof at step
18  three. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).
19   Listing 11.02(D) requires that a claimant experience dyscognitive seizures at least once
20  every two weeks for at least three consecutive months, despite adhering to the treatment
21  prescribed, and that the seizures cause a marked limitation in physical or mental functioning. *See*
22  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02(D). The ALJ found that Plaintiff's seizure disorder
23  does not meet Listing 11.02 "because the record does not contain documentation of tonic-clonic

ORDER - 3

or dyscognitive seizures occurring with the requisite frequency and timing, in conjunction with adherence to prescribed treatment. The record also does not document marked physical limitation or marked mental limitation[.]" AR at 19. The ALJ went on to explain that Plaintiff's seizure journal entries (*id*. at 608-53, 656-57) do not satisfy the listing requirements because: (1) some of the entries lacked specificity as to seizure symptoms and/or do not establish that Plaintiff was fully compliant with treatment at the time of those seizures; and (2) some of the seizure journal entries were illegible, even though Plaintiff has had "ample time to supplement." *Id*. at 19. The ALJ also found that the medical records did not corroborate Plaintiff's allegation of listing-level seizures. *Id*. Accordingly, because the record did not demonstrate that Plaintiff's seizure disorder satisfied all of the requirements of Listing 11.02, the ALJ found Plaintiff not disabled at step three. *Id*.

      Plaintiff disagrees with the ALJ's assessment of the record, contending that his seizure disorder does meet Listing 11.02(D). Plaintiff does not dispute that his seizure journal is illegible in places, but argues that the ALJ should have asked for clarification before discrediting that evidence. (Dkt. # 8 at 6-7.) Plaintiff also argues that his journal entries are specific enough to constitute evidence of dyscognitive seizures (*id*. at 8-10), despite the ALJ's complaint that Plaintiff's descriptions of "black out" or "absence" seizures and dizziness symptoms were insufficient. *See* AR at 19. Lastly, Plaintiff argues that the fact that his normal physical functioning at times unrelated to seizures is irrelevant because the only time his seizure disorder would be expected to cause physical problems is during or soon after a seizure. (Dkt. # 8 at 10.) According to Plaintiff, if his seizure journals are credited, he meets Listing 11.02(D).

      Plaintiff's arguments are insufficient to show that his seizure disorder satisfies *all* of the elements of Listing 11.02(D). Even if Plaintiff is correct that his seizure journals establish that he

ORDER - 4

experiences seizures at the frequency/timing required by Listing 11.02(D), he has nonetheless failed to show that these seizures persisted despite compliance with his treatment regimen. The ALJ discussed Plaintiff's compliance problems at length in the decision (AR at 23), and Plaintiff did not challenge these findings.

Plaintiff has also failed to show that his seizure disorder caused either marked physical or mental limitations, as those limitations are defined in the regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00G. The ALJ found that Plaintiff's mental limitations were at most mild (AR at 17-18) and that his seizures did not lead to ongoing physical deficits (*id*. at 24), and Plaintiff has not challenged these findings. At most, Plaintiff contends that he experienced physical deficits intermittently at the time of his seizures (dkt. # 8 at 10), but the listing requires physical limitations that have lasted or are expected to last twelve months. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00G(3)(a). Thus, Plaintiff has failed to show that the ALJ erred in finding that Plaintiff's seizure disorder did not satisfy the functional limitation element of the Listing 11.02(D), either.

Accordingly, because Plaintiff has not shown that the ALJ was incorrect in finding that his seizure disorder does not satisfy all of the elements of Listing 11.02(D), Plaintiff has not established that the ALJ harmfully erred at step three.

### B. Plaintiff Has Not Established Error in the RFC Assessment

Plaintiff notes that the ALJ's RFC assessment is inconsistent with his own testimony and the lay witness reports. (Dkt. # 8 at 13-14.) However, the ALJ explained why he discounted Plaintiff's testimony and the lay statements (*see* AR at 20-25, 27), and Plaintiff's brief does not address the ALJ's reasoning. An ALJ may discount a claimant's testimony upon providing clear and convincing reasons, and may discount lay statements for germane reasons. *See Burrell v.*

ORDER - 5

*Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Because Plaintiff has not addressed the ALJ's reasoning in any meaningful way, he has failed to meet his burden to show harmful legal error in the ALJ's reasons for discounting Plaintiff's testimony or the lay statements.

### C. The ALJ Did Not Err at Step Five

At step five, the Commissioner bears the burden to show that a claimant is not disabled because he or she can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). In this case, Plaintiff makes several arguments in challenging the ALJ's step-five findings, each of which the Court will address in turn.

First, Plaintiff notes that at the 2018 hearing, a VE testified that employers tolerate 5-8 unanticipated, unexcused absences per year, but the VE at the 2021 hearing testified that employers tolerate one absence per month. (Dkt. # 8 at 14 (citing AR at 76, 108-09).) According to Plaintiff, the ALJ erred in failing to reconcile the discrepancies in this testimony, which constitutes harmful error "for the correct assessment may certainly impact the outcome of this case if the case were to proceed to Step Five." (*Id.*) It is not entirely clear that the two sets of VE testimony are inconsistent because the 2021 VE was not asked specifically about unanticipated, unexcused absences. But even assuming there is a discrepancy, it is irrelevant to the ALJ's decision because the ALJ did not include any absenteeism limitations in the RFC assessment. *See* AR at 20. Thus, to whatever extent the VE testimony is inconsistent regarding absenteeism tolerances, it did not impact the ALJ's decision.

Next, Plaintiff emphasizes that he and the lay witnesses testified that his symptoms impact his ability to be productive at work and stay on task (dkt. # 8 at 14-15), but this argument

ORDER - 6

fails to establish harmful error in the ALJ's decision because, as noted *supra*, the ALJ discounted Plaintiff's testimony and the lay statements for unchallenged reasons.

Lastly, Plaintiff objects to the form of a question that the ALJ asked the VE during the 2021 hearing. At the hearing, in response to counsel's questions, the VE testified that if an employee is 10% less productive than average, this employee would face a high risk of termination. AR at 77-78. Counsel followed up to ask whether an employee who "has both a problem with absenteeism and also a problem with productivity" would face a higher risk of termination, and the VE testified that this combination would affect a "certain percentage" of people that would face a higher risk of termination, but that he could not quantify the percentage. *Id*. at 78. The ALJ followed up on that answer:

> ALJ: And, [VE], picking up on this last question and last answer, would you feel comfortable, even though you don't know the exact amount of jobs that might be lost with a combination of one [] absence per month and 10% off task or 10% less productive. But, if we were to say, slash 50% of all the jobs that you cited for each one of the three occupations, would [] we be left with a number of jobs that you could say on a more likely than not basis employers would tolerate the combination of the two, one absence per month and 10% either off task or below production?
>
> VE: I think that would be a reasonable estimate.

*Id*. at 78-79. Counsel asked the VE for the foundation of that last answer, and the VE testified that this answer was based on his "years of experience working in coordination with employees and employers in a placement capacity." *Id*. at 79.

Plaintiff contends that when the ALJ asked the VE if he would "feel comfortable" with the hypothetical, the ALJ's questioning was improper and should be stricken because "[t]hese cases are to be decided not on how an expert 'feels,' but on substantial evidence provided by an expert, along with the balance of the record." (Dkt. # 8 at 15-16.) Plaintiff's argument plucks one phrase out of a much longer question that, when read in its entirety, does not encourage the VE

ORDER - 7

to testify based on his feelings. The VE explicitly cited his years of experience as the foundation for his testimony. AR at 79. And even if the form of the question had been improper, the ALJ did not rely on this portion of the VE's testimony because the ALJ's RFC assessment does not include any absenteeism or off-task limitations, as noted *supra*. Plaintiff's focus on this portion of the VE's testimony thus fails to advance any attempt to show harmful legal error in the ALJ's decision.

Because Plaintiff has failed to identify any harmful legal error related to the ALJ's step-five findings, the Court finds no basis to reverse at step five.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED**, and this case is **DISMISSED** with prejudice.

Dated this 30th day of August, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 8